**The Law Firm of Andrew M. Stengel P.C.**
11 Broadway, Suite 715
New York, New York 10004
(212) 634-9222   |   andrew@stengellaw.com   |   (212) 634-9223 (Fax)

February 11, 2025

**By ECF**
Honorable Marcia M. Henry
Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Freeman v. The City of New York, et al.*  24 CV 1267 (AMD) (MMH)
      *Viera v. The City of New York, et al.* 24 CV 1272 (BC) (MMH)

Dear Judge Henry:

  We write in response to the Kings County District Attorney's ("KCDA") February 10, 2025, letter (Doc. No. 57) providing the Court with a copy of an undated "disclosure" letter from Plaintiffs' trial prosecutor, Assistant District Attorney ("ADA") Melissa Carvajal, to Plaintiffs' defense attorneys in the underlying prosecution. Ms. Carvajal's undated letter reveals that she relocated prosecution witness Kenneth Williams and "provided nominal transportation expenses for doctor follow-up visits and nominal living expenses, to wit $100/week for the year." The KCDA cited this letter during our February 6, 2025, court conference claiming that Ms. Carvajal complied with her *Brady* obligations and arguing that Plaintiffs' claims of non-disclosure are baseless. The KCDA apparently misunderstands the claims pleaded in the complaints, and that Ms. Carvajal's undated letter actually *bolsters* Plaintiffs' claims.

  Plaintiffs' complaints do *not* plead that Ms. Carvajal failed to disclose that she relocated Mr. Williams. The complaints *do* plead that ADA "Carvajal withheld that the DA's Office **relocated Williams' fiancé and paid thousands of dollars toward her housing costs**." Freeman's First Amended Complaint ("FAC") ¶ 111 (emphasis added).

  Plaintiffs further allege Ms. Carvajal "withheld a host of records that the KCDA's Witness Protection Program required to be prepared in connection with all witness relocations, including a memorandum from Ms. Carvajal regarding the assistance she requested for Mr. Williams and his fiancé, and written agreements between the DA's Office and Mr. Williams and his fiancé itemizing the assistance the DA's Office would provide." Decision and Order in *People v. Louis Charriez*, Kngs Co. Ind. No. 1778/97, pp. 4-5 (Sup. Kings Co. March 1, 2022) (Tully, J.) ("Here, the trial prosecutor's *Brady* obligations extended to the disclosure of the signed agreements, financial records and all documents relating to the monies paid to the witnesses), *citing People v. Steadman*, 82 N.Y.2d 1 (1993); *People v. Colon*, 13 N.Y.3d 343 (2009). Plaintiffs further allege Ms. Carvajal "failed to disclose that Williams was a crack-cocaine addict, and in all likelihood,

still on drugs at the time he was relocated," and the transcript of Mr. Williams' "riding" interview. *Id.* ¶¶ 113-114.

Nothing in Ms. Carvajal's undated letter indicates she disclosed any of these facts to our clients or their attorneys. Moreover, even if Ms. Carvajal disclosed to the defense attorneys that "the People provided" Mr. Williams with relocation benefits, that did not satisfy Ms. Carvajal's obligation to disclose the additional and significant consideration she personally helped Mr. Williams obtain in the form of thousands of *additional* dollars from the New York State Crime Victims Board.

Additionally, Ms. Carvajal's undated letter does *not* reflect any disclosure of the issues surrounding the protective order she personally obtained for Nicole Williams, the only other identifying witness in the prosecution of Plaintiffs. As previously discussed (Doc. No. 48 at pp. 3-4), Ms. Carvajal obtained a pre-trial protective order allowing her to keep Ms. Williams' testimony secret until the day she testified. Ms. Carvajal falsely swore in her application for the protective order that the defense would not be prejudiced by this procedure because "no discover[y] or *Rosario* material exists" regarding Ms. Williams as she was never interviewed by the police and only made oral statements to the Assistant District Attorney."

In truth, months before Ms. Carvajal applied for this protective order, the KCDA and NYPD secretly arranged for Ms. Williams to receive housing benefits because of her cooperation against Plaintiffs, and there was substantial undisclosed written discovery material on that matter. *See e.g.* Doc. No. 48-4 (November 25, 2013, NYPD email to KCDA indicating Ms. Williams picked "where she wants to move" and that the NYPD "already accommodated her once before, after she rejected [an] initial offer."); *id.* (December 10, 2013, KCDA email to NYPD indicating the KCDA "request[ed] assistance in … obtaining [Williams'] emergency transfer" based on a false claim that Ms. Williams was threatened); Doc. No. 48-5 (December 19, 2013, NYPD Interest of Justice Transfer Request asking the City Housing Authority to relocate Ms. Williams as she "is cooperating with the NYPD or other law enforcement agency" and assisting in the prosecution of a criminal case."); Doc. No. 48-6 (KCDA Witness Relocation Unit Email to prosecutor Melissa Carvajal, January 14, 2014, informing Ms. Carvajal that after Ms. Williams was initially relocated, Ms. Williams requested even better housing).

Nothing in Ms. Carvajal's letter indicates she disclosed this *Brady* material, admitted to the defense that she misled the court in obtaining the protective order or that she misled the jury in summation in arguing Ms. Williams did not have any motive to lie—because she did not make these required disclosures. FAC ¶ 121 ("[W]hat motive does she have to lie? To come in here?").

Thus, contrary to the KCDA's claims, ADA Carvajal's "disclosure" letter only bolsters the allegations that she unconstitutionally suppressed a host of *Brady* material during Plaintiffs' underlying prosecutions.

Respectfully submitted,

Andrew M. Stengel

cc:   All counsel via ECF

2