UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

                        :

RODGER FREEMAN,               :

                        :   **DECLARATION OF ANDREW M.**

            Plaintiff,     :   **STENGEL IN SUPPORT OF**

                        :   **PLAINTIFF'S MOTION TO UNSEAL**

     -against-          :

                        :   24 CV 1267 (BC) (MMH)

                        :

                        :

THE CITY OF NEW YORK; NYPD   :

DETECTIVE JOHN MCDONALD;   :

NYPD DETECTIVE CHRISTOPHER  :

OBDYKE; and NYPD POLICE     :

OFFICER MIGUEL VARGAS,     :

                        :

          Defendants.    :

                        :

———————————————————————X

ANDREW M. STENGEL, an attorney duly admitted to practice Law in the State of New York, hereby declares under the penalty of perjury that the following is true:

1.     I represent Rodger Freeman ("Freeman"), the Plaintiff in this 42 U.S.C. § 1983 action seeking damages for Freeman's wrongful prosecution and 14-year imprisonment.

2.     I submit this affirmation in support of Freeman's motion to unseal the Kings County District Attorney's ("KCDA") case files concerning three arrests and/or criminal cases of star prosecution witness Kenneth Williams ("Williams"), who is deceased. *See e.g. Howard v. City of Rochester*, 758 F. Supp.3d 109, 128 (W.D.N.Y. 2024) (Pendersen, M.J.) ("The Court ... has the authority to order the [DA] to hand over … 160.50 records.")

3.     The KCDA's case files were sealed under New York State Criminal Procedure Law ("CPL") § 160.50, a statute that does *not* govern discovery in § 1983 actions. *See e.g. King v.*

1

*Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (Weinstein, J.) ("New York state law does not govern discoverability and confidentiality in federal civil rights actions").

4.      On October 23, 2025, Freeman served a subpoena on KCDA for the case files. However, after consulting with the KCDA, the KCDA informed us that the case files were sealed under CPL § 160.50.  We then agreed that Freeman would move this Court to unseal the files, and the KCDA would respond to this motion.[1]

## I.  SUMMARY OF MOTION

5.      Freeman's First Amended Complaint ("FAC") alleges Williams, along with Defendant Detectives John McDonald, Christopher Obdyke and Police Officer Miguel Vargas, conspired to maliciously prosecute Freeman and violate his fair trial rights during his 2014 attempted murder trial.

6.      The defendants manufactured Williams' false statement and identification implicating Freeman in the crime, and through a series of false reports and statements to the KCDA, discredited Williams' dying declaration identifying two other men as the perpetrators.  *See* FAC (First, Second, Third, Sixth and Seventh Causes of Action).

7.      The police theory of the case was that Freeman and others attempted to kill Williams to prevent him from testifying against Freeman's friend who was about to start trial on an unrelated murder case.

8.      As typified by the prosecution's summation at Freeman's trial, the narrative posited the only explanation for Williams being shot was his upcoming testimony against Freeman's friend, as Williams was nothing more than a simple man, uninvolved in criminal activity, who worked in a local grocery store for $20 a day:

---

[1] Although Williams is deceased, the KCDA's position is that despite his death, the records are still sealed under CPL § 160.50.

2

> "[Y]ou have the fact that [Freeman's friend] was the only person on the planet on January 17th of 2011 that had a reason to want Kenneth Williams dead …. Running Man is Kenneth Williams' name.  It has nothing to do with drugs.  The guy works at a grocery store seven days a week for twenty dollars a day.  He is like a fixture at the store.  He's not running drugs …. [Y]our job is to go on the evidence, not baseless speculation."

Exhibit A (Trial Transcript, Prosecution Summation, pp. 19-20, 32-33).

9.      KCDA's records recently disclosed through civil discovery in this case totally shatter this false narrative.

10.      The KCDA records reveal Williams was actually a gang member, part of the violent "Hard Body" Crew, that was deeply involved in the drug and gun trades:

### KCDA HARD BODY GANG ORGANIZATIONAL CHART



 Exhibit B.[2]

---

[2] The names, NYSID numbers, and pedigree information of the other alleged gang members have been redacted.  The KCDA disclosed the chart as two separate pdfs, and we combine them side-by-side here for

11.     Discovery also revealed that Williams had three sealed arrests and/or criminal cases, one of them for drug possession, and an order of protection pending against him at the time he was shot.

12.     Williams' criminal activity, gang membership, order of protection, and the KCDA case files, are relevant to Freeman's individual claims and several other issues in this case.[3]

13.     **First**, Williams' gang membership and criminal activity offer an explanation for why Williams was shot, unrelated to his testimony at Freeman's friend's trial, and lend credence to Freeman's theory that Williams only implicated Freeman because of defendants' misconduct.

14.     **Second**, Williams' gang membership and criminal activity cast his presence in East New York, where he was shot, in a totally different light.  Police and prosecutors contended Williams reluctantly rode with Freeman and his friends from Cooney Island to East New York where Williams then shot.

15.     But Williams' gang membership and criminal activity, along with other evidence Freeman obtained, show Williams *voluntarily* went to East New York *with fellow gang members*— likely on gang business—and his shooting was an independent, spontaneous act by individuals other than Freeman.  *See e.g.* FAC at ¶¶ 25-26 (referencing an attached police report recording Williams' dying declaration that gang members "Poppy" and "Jamal" were the shooters, not Freeman and co-plaintiff Viera).

---

ease of review.  The pdfs in their native form, Plaintiff's Bates Nos. 116863-116864, and in the side-by-side display, are included as Exhibit B.

[3] The term "relevant" under the Federal Rules of Civil Procedure is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" and the matter "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2025 WL 2597245, at *3 (E.D.N.Y. Aug. 27, 2025) (Pollack, M.J.) (cleaned up).

4

16.     Williams' gang membership and criminal activity undermine two central planks of the criminal case against Freeman, and will allow Freeman to counter the City and individual defendants' inevitable argument that he is factually guilty of the underlying crime.

17.     **Third**, the KCDA case files will:

(a)     Document Williams' arrests, provide the factual details of what he was charged with, and possibly show the arrests were gang related, or of the same nature or in the same location as the gang's other crimes, and thus additional evidence of Williams' gang activity;

(b)     Demonstrate, under Fed.R.Evid. 404(b), Williams' lack of general credibility, motive, intent, plan, knowledge, and absence of mistake in conspiring to maliciously prosecute and deny Freeman his right to a fair trial. The files may also be relevant to rebut any hearsay statement by Williams that Defendants may attempt to admit at trial under a hearsay exception;

(c)     Facilitate Freeman's depositions about if, when McDonald, Odbyke and Vargas met with prosecutors and sought to have Freeman charged with attempted murder, they disclosed Williams' gang membership and criminal activity underlying his arrests;

(d)     Identify the law enforcement officers involved in Williams' cases. Critically, two of Williams' cases took place after he began cooperating with Detective McDonald in the homicide investigation that police and prosecutor's claim led to his shooting. Williams' arrest records could reveal whether the defendants or their colleagues were involved in helping Williams obtain the favorable dispositions he received on those cases, and thus that Williams was incentivized to go along with defendants' false narrative;[4] and

(e)     Establish Freeman's constitutional right to a fair trial was violated when Williams' gang membership and criminal activity underlying his arrests were suppressed from Freeman at trial, and the false "Williams was a simple

---

[4] This would be consistent with other secret consideration Williams received as a result of his cooperation. During Freeman's trial the prosecutor represented the only consideration the KCDA extended to Williams was relocating him and giving him $100 a week to cover his living expenses. *See* Exhibit C. However, civil discovery in this case revealed Williams actually entered into written agreement to enter the KCDA's Voluntary Custody Program, was housed for nearly a year in a hotel at KCDA expense, the KCDA advocated for Williams to receive thousands of dollars from the NYS Crime Victims Board, and the KCDA relocated Williams' fiancé. *See* Exhibit D (Documentation of some of undisclosed consideration the KCDA provided to Williams and his then fiancé).

guy" narrative argued in summation.

18.     Accordingly, the KCDA's case files on Williams' three sealed cases should be unsealed.

## II.  THE RELEVANT FACTS

### A.     Freeman's § 1983 Action

19.     Freeman's § 1983 action alleges he spent 14 years in prison due to violations of his constitutional rights to a fair trial, and to not be maliciously prosecuted or have fabricated evidence used against him.

20.     Freeman's individual claims allege Detective McDonald fabricated a photo identification and statement from Williams incriminating Freeman, FAC ¶ 64, and Detective Obdyke and Officer Vargas made false statements to prosecutors discrediting Williams' dying declaration identifying gang members "Poppy" and "Jamal" as the individuals who shot him. *Id.* at ¶¶ 60-64. [5] *See* FAC (First, Second, Third, Sixth and Seventh Causes of Action).

21.     The FAC also alleges Williams conspired with the police defendants to maliciously prosecute Freeman, and violate Freeman's fair trial rights, by adopting the police defendant's false narrative.

### B.     Freeman's Subpoena

22.     As relevant here, Freeman's October 22, 2025, subpoena *duces tecum* to the KCDA required the production of:

> (a)     The complete case files of the New York City Police Department and Kings County District Attorney's Office, including all documents, records, reports, files, and electronically stored information, concerning the arrest of Kenneth Williams, NYSID 1122748Q, date of birth [], on November 5, 2008, under Arrest Number K08697991, the disposition and/or dismissal of

---

[5] On September 30, 2025, the Court bifurcated discovery regarding Freeman's municipal liability claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

that arrest, and the names of the officers and/or detectives who arrested Mr. Williams.

(b) The complete case files of the New York City Police Department and Kings County District Attorney's Office, including all documents, records, reports, files, and electronically stored information, concerning the arrest and prosecution of Kenneth Williams, NYSID 1122748Q, date of birth [], on November 9, 2010, under *People Kenneth Williams*, Kings County Criminal Court Docket No. 2010KN089397, Arrest Number K10707449.

(c) The Temporary Order of Protection issued in People v. Kenneth Williams, Kings County Criminal Court Docket No. 2010KN089397 against Kenneth Williams, in favor of Joseph Williams, NCIC Protection Order Number 2010-042039 (in effect from November 10, 2010 to May 27, 2011).

(d) The complete case files of the New York City Police Department and Kings County District Attorney's Office, including all documents, records, reports, files, and electronically stored information, concerning the arrest and/or prosecution of Kenneth Williams, NYSID 1122748Q, date of birth NYSID 1122748Q, date of birth [], on May 13, 2003, for criminal trespass (60th Precinct).[6]

Exhibit E.

23. On November 3, 2025, Freeman met and conferred with the KCDA. The KCDA advised us that Williams' cases were sealed, and even though Williams is deceased, the KCDA's position is that his death did not impact that sealing.

24. To facilitate the resolution of this issue, we proceeded to file the instant motion.

25. As more fully demonstrated in our accompanying memorandum of law, CPL § 160.50 cannot bar discovery of relevant evidence in a federal civil rights action. Independently, none of the state policy interests animating CPL § 160. 50 are implicated in this case as Williams is deceased. *See e.g. In re Stanley*, 32 Misc.3d 897, 902 (Sup. Ct. Kings Co. 2011) (Gary, J.)

---

[6] On November 7, 2025, with the KCDA's consent, Freeman amended his subpoena to include Williams' criminal trespass case file, Item "d" of the subpoena.

("[T]here is absolutely no interest protected by CPL 160.50 that would be implicated by unsealing the court records of a deceased person.")

WHEREFORE, Freeman respectfully requests that the Court unseal the KCDA's case files of Williams' three arrests and/or criminal cases, and grant such further relief as this Court deems proper.

Dated:      November 14, 2025
            New York, New York

Andrew M. Stengel, Esq.
The Law Firm of Andrew M. Stengel, P.C.
*Attorneys for Rodger Freeman*
11 Broadway Suite 715
New York, New York, NY 10004
Phone: (212) 634-9222
Fax: (212) 634-9223
Email: andrew@stengallaw.com

8