UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X
                  :

RODGER FREEMAN,             :
                  :
        Plaintiff,     :
                  :
    -against-     :   24 CV 1267 (BC) (MMH)
                  :

THE CITY OF NEW YORK; NYPD   :
DETECTIVE JOHN MCDONALD;    :
NYPD DETECTIVE CHRISTOPHER  :
OBDYKE; and NYPD POLICE     :
OFFICER MIGUEL VARGAS,     :
                  :
        Defendants.   :
                  :
———————————————————————X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT HIS MOTION TO UNSEAL

---

Andrew M. Stengel, Esq.
The Law Firm of Andrew M. Stengel, P.C.
*Attorneys for Rodger Freeman*
11 Broadway Suite 715
New York, New York, NY 10004
Phone: (212) 634-9222
Fax: (212) 634-9223
Email: andrew@stengallaw.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………….. 1

ARGUMENT

    THE KCDA CASE FILES OF PROSECUTION WITNESS KENNETH
    WILLIAMS' THREE ARRESTS AND/OR CRIMINAL CASES SHOULD
    BE UNSEALED ………………………………………………………………… 2

    A.    The Applicable Legal Standard ……………………………………….. 2

    B.    The KCDA's Files of Williams' Arrests and/or Cases Are
        Extraordinarily Relevant To Freeman's Claims Against McDonald,
        Obdyke And Vargas …………………………………………………….. 4

    C.    Freeman's Interest In Obtaining Relevant Discovery Far Outweighs
        CPL § 160.50's Policy Considerations, Especially Because Williams
        Is Deceased ………………………………………………………………. 7

CONCLUSION ……………………………………………………………………….. 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X
                                          :

RODGER FREEMAN,                     :
                                            :

               Plaintiff,       :
                                            :

       -against-           :     24 CV 1267 (BC) (MMH)
                                            :

THE CITY OF NEW YORK; NYPD     :
DETECTIVE JOHN MCDONALD;     :
NYPD DETECTIVE CHRISTOPHER  :
OBDYKE; and NYPD POLICE       :
OFFICER MIGUEL VARGAS,       :
                                            :

              Defendants.     :
                                          :

———————————————————————X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
HIS MOTION TO UNSEAL**

**PRELIMINARY STATEMENT**

Plaintiff Rodger Freeman ("Freeman"), by his attorney Andrew M. Stengel, submits this Memorandum of Law in support of his motion to unseal the Kings County District Attorney's Office's ("KCDA") case files on star prosecution witness Kenneth Williams' three arrests and/or criminal cases.

The facts underlying this Memorandum are set forth in the November 12, 2025, Declaration of Andrew M. Stengel ("Stengel Decl.") in support of this motion.

Freeman was convicted of the January 17, 2011, attempted murder of Kenneth Williams. The police and prosecutor's theory of the case was that Freeman attempted to kill Williams because

1

Williams was scheduled to testify against Freeman's friend in an unrelated murder case. The theory posited that because Williams was a simple man who worked at a local grocery store earning $20 a day, there was no other explanation for him being shot.

Civil discovery from the KCDA indicates this narrative was absolutely false. That discovery reveals Williams was the opposite of a simple man: Williams was a member of a violent Brooklyn street gang that was known to deal in drugs and guns. Prior to his trial testimony against Freeman, Williams was arrested three times, once for drug possession, and there was an active order of protection against him at the time he was shot.

All of this evidence, which was suppressed during Freeman's criminal trial, demonstrates Williams could have been shot for several reasons unrelated to his testimony against Freeman's friend, thus undermining KCDA's theme of the case against Freeman argued to the jury. For these reasons, and others discussed below, the KCDA case files for Williams' arrest and/or cases, and the criminal conduct underlying them, are extraordinarily relevant to this lawsuit.

While Williams' cases are sealed under New York Criminal Procedure Law ("CPL") § 160.50, that statute cannot preclude disclosure of this relevant information in federal litigation. Discoverability and confidentiality in Freeman's § 1983 action are governed by federal law, not state law, and thus KCDA's case files on Williams' cases should be unsealed.

## ARGUMENT

**THE KCDA CASE FILES OF PROSECUTION WITNESS KENNETH WILLIAMS' THREE ARRESTS AND/OR CRIMINAL CASES SHOULD BE UNSEALED**

### A.     The Applicable Legal Standard

"[W]hen a plaintiff sues in federal court to vindicate federal civil rights, 'New York state law does not govern discoverability and confidentiality[.]'" *Howard v. City of Rochester,* 758 F. Supp.3d 109, 121 (W.D.N.Y. 2024) (Pedersen, M.J.), quoting *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (Weinstein, J.); *Crosby v. City of New York,* 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (Scheindlin, J.) (holding "in cases presenting federal questions … discoverability, privileges, and confidentiality are governed by federal law, not state law").

Nevertheless, "in the interest of comity, [federal] courts should attempt to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *McCloud v. City of New York,* 2025 WL 2711470, at *2 (E.D.N.Y. Sept. 23, 2025) (Pollack, M.J.) (citations omitted). Such state privacy rules, however, "should never be permitted to frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Lehman v. Kornblau,* 206 F.R.D. 345, 348 (E.D.N.Y. 2001) (Wall, M.J.) (internal quotation omitted).

Rather than "mechanically apply a state rule where doing so 'would be undesirable and improper,'" *Howard v. City of Rochester,* 758 F.Supp.3d at 122, the Court must instead "balance the deference to be accorded state-created privileges with the need for the information to be protected by the privilege." *Crosby v. City of New York,* 269 F.R.D. at 275; *McCloud v. City of New York,* 2025 WL 2711470, at *2.

Regarding records sealed under New York Criminal Procedure Law § 160.50, a district court hearing a § 1983 action "has the authority to order the [DA] to hand over … 160.50 records." *Howard v. City of Rochester*, 758 F. Supp.3d at 128. Thus, "federal courts commonly order production of documents sealed pursuant to Sections 160.50." *McCloud v. City of New York,* 2025 WL 2711470, at *4 (cleaned up); *Crosby v. City of New York,* 269 F.R.D. at 275 (same).

For example, in *Lyles v. City of New York*, 2009 WL 4276969 (S.D.N.Y. 2009) (Sweet, J.), the district court rejected the New York County District Attorney's argument that production of documents in a civil rights action was barred by CPL § 160.50, and held "state law has been rejected as a basis to block discovery in an action such as this one, where plaintiffs are asserting federal claims." *Id.* at *1, citing *Haus v. City of New York*, 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006) (Dolinger, M.J.)

Most recently, in *McCloud v. City of New York,* 2025 WL 2711470, at *2, Magistrate Pollack, after reviewing records sealed under CPL § 160.50 *in camera*, ordered disclosure of a host of materials, including the criminal complaint, indictment, case chronology, documents indicating the defendant was a witness in a homicide case, and documents relevant to the McCloud plaintiff's civil *Brady* claim. *Id.* at *13.

**B.    The KCDA's Files of Williams' Arrests and/or Cases Are Extraordinarily Relevant To Freeman's Claims Against McDonald, Obdyke, And Vargas**

Relevance under Fed.R.Civ.P. 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case[,]" and the matter "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2025 WL 2597245, at *3 (E.D.N.Y. Aug. 27, 2025) (Pollack, M.J.) (cleaned up). The KCDA case files easily satisfy this liberal standard.

4

**First**, the KCDA files provide documentary proof that will allow Freeman to counter the City and the individual defendants' inevitable argument that he is factually guilty of the underlying crime. As we have shown, Stengel Decl. at ¶¶ 7-8, a key theme permeating Freeman's criminal case was that Freeman's guilt could be inferred from the fact that Williams was a simple, hardworking man, who was not involved in selling drugs, and there was no reason for him to have been shot other than his upcoming testimony against Freeman's friend.

Civil discovery in this case, however, has revealed (1) Williams was actually a member of a violent street gang ("Hard Body") that was deeply involved in the drug and gun trade, Stengel Decl. at ¶ 10, (2) Williams was arrested three times, including once for drug possession, *id.* at ¶ 11, and (3) Williams had an order of protection pending against him at the time he was shot. *Id.*

Another key theme permeating Freeman's criminal case was that Williams reluctantly rode with Freeman and his friends from Cooney Island to East New York where Williams then shot. But Williams' criminal activity and gang membership, along with our other evidence, shows Williams voluntarily went to East New York with fellow gang members —likely on gang business— and his shooting was an independent, spontaneous act by individuals other than Freeman and his co-plaintiff Shamar Viera. *See e.g.* FAC at ¶¶ 25-26 (referencing an attached police report recording Williams' dying declaration that gang members "Poppy" and "Jamal" were the ones who shot him, not Freeman and Viera).

Developing the facts surrounding Williams criminal conduct and gang activity will thus (1) provide a powerful basis to counter the narrative that Williams was shot because he was as a witness against Freeman's friend, and (2) show it was more likely that Williams was shot because he was a gang member, in East New York on gang business, when he was shot by fellow gang members "Poppy" and "Jamal," whom he immediately identified to police.

**Second**, the KCDA files may provide evidence that McDonald, Obdyke and Vargas' misled the KCDA when prosecutors were deciding whether to charge Freeman with attempted murder. *See* FAC (First, Second, Third, Sixth and Seventh Causes of Action). It may be that the prosecutors reviewing the potential charges against Freeman were unaware of Williams' arrest history and gang involvement, and the officers meeting with them knowingly omitted these facts, and the alternative explanation for Williams' shooting, from their presentation.

Such a knowing omission could directly support Freeman's malicious prosecution and evidence fabrication claims. *See e.g. Buari v. City of New York*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) ("Showing that the police failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith satisfies the initiation element of malicious prosecution.") (quotes omitted); *Morse v. Fusto*, 804 F.3d 538, 547-48 (2d Cir. 2015) (a defendant may be liable for evidence fabrication by virtue of material omissions of fact); *Kee v. City of New York*, 12 F.4th 150, 170 (2d Cir. 2021) ("[F]alsified information underlying [an evidence fabrication] claim may be conveyed … orally, to prosecutors.")

**Third**, the KCDA's files will:

(1)    Document Williams' arrests, provide the factual details of what he was charged with, and possibly show the arrests were gang related, or of the same nature or in the same location of the gang's other crimes, and thus additional evidence of Williams' gang activity;

(2)    Demonstrate, under Fed.R.Evid. 404(b), Williams' lack of general credibility, motive, intent, plan, knowledge and/or absence of mistake in conspiring to maliciously prosecute and deny Freeman his right to a fair trial. The files may also be relevant to rebut any hearsay statement by Williams that Defendants may attempt to admit at trial under a hearsay exception;

(3)     Facilitate Freeman's depositions on whether, when McDonald, Odbyke and Vargas met with prosecutors and sought to have Freeman charged with attempted murder, they failed to disclose Williams' criminal activity underlying his arrests and his gang membership;

(4)     Identify the law enforcement officers involved in Williams' cases.  Critically, two of Williams' cases took place *after* he began cooperating with Detective McDonald in the homicide investigation that police and prosecutor's claim led to his shooting. Williams' arrest records could reveal whether the defendants or their colleagues were involved in helping Williams obtain the favorable resolution he received on those cases;[1] and

(5)     Establish Freeman's constitutional right to a fair trial was violated when Williams' gang membership and criminal activity underlying his arrests were suppressed from Freeman at trial, and the false "Williams was a simple guy" narrative argued in summation.

**C.     Freeman's Interest In Obtaining Relevant Discovery Far Outweighs CPL § 160.50's Policy Considerations, Especially Because Williams Is Deceased**

"The primary purpose of the sealing of records pursuant to § 160.50 is to ensure confidentiality and to protect ... individual[s] from the potential public stigma associated with a criminal prosecution."  *McCloud v. City of New York*, 2025 WL 2711470, at *3; *Lehman v. Kornblau*, 206 F.R.D. at 347.

Here, it is undisputed that Williams is deceased.  While as a general matter CPL § 160.50 applies to records of a deceased defendant, *New York Times Co. v. Dist. Att'y of Kings Cnty.*, 179 A.D.3d 115, 124 (2d Dep't 2019), "there is absolutely no interest protected by CPL 160.50 that would be implicated by unsealing the court records of a deceased person."  *In re Stanley*, 32 Misc.3d 897, 902 (Sup. Ct. 2011) (Gary, J.).

In 1976, CPL § 160.50 was enacted in the same reform legislation that added a provision to the Human Rights Law (now Executive Law § 296(16)) making it an unlawful discriminatory

---

[1] As discussed in n. 4 of the Stengel Decl., this would be consistent with the other undisclosed consideration Williams received for cooperating with law enforcement.  *Id.* (explaining how civil discovery in this case revealed the KCDA showered Williams and his fiancé with a host of undisclosed benefits in exchange for Williams' cooperation in the criminal case against Freeman).

practice for an employer, in connection with the employment of an individual, to inquire about or act adversely on any prior criminal accusation which had terminated in the employee's favor. *In re Stanley*, 32 Misc.3d at 901. As the New York Court of Appeals explained,

> "[T]he over-all scheme of the enactments demonstrates that the legislative objective was to remove any 'stigma' flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording …the presumption of innocence … to such accused *in the pursuit of employment, education, professional licensing and insurance opportunities*."

*People v. Patterson*, 78 N.Y.2d 711, 716 (1991) (emphasis added).

Obviously, none of these considerations apply to a person who is deceased. With no such concerns at stake, Freeman's "strong interest in obtaining records relevant to" his claims, *Owens v. County of Monroe*, 2025 WL 1902225, at *4, (W.D.N.Y. 2025) (Holland, M.J.), and the "strong federal interests in broad discovery and truth-seeking" which state privilege rules "should not be permitted to frustrate," *Crosby v. City of New York*, 269 F.D.R. at 274 (internal quotations omitted), compel unsealing of the KCDA's case files.

## CONCLUSION

The Court should unseal the KCDA's case files on Williams' three arrests and/or cases, and grant such further relief as this Court deems proper.

Dated:    November 14, 2025
          New York, New York

Andrew M. Stengel, Esq.
The Law Firm of Andrew M. Stengel, P.C.
*Attorneys for Rodger Freeman*
11 Broadway Suite 715
New York, New York, NY 10004
Phone: (212) 634-9222

8

Fax: (212) 634-9223
Email: andrew@stengallaw.com

9