THE LAW FIRM OF ANDREW M. STENGEL, P.C.
11 BROADWAY, SUITE 715
NEW YORK, NEW YORK 10004
(212) 634-9222 | ANDREW@STENGELLAW.COM | (212) 634-9223 (FAX)

April 27, 2026

**By ECF**
Hon. Marcia M. Henry
Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     **Request For Rule 37.2 Conference**
        ***Freeman v. The City of New York, et al.*  24 CV 1267 (BC) (MMH)**
        ***Viera v. City of New York, et al.*, 24 CV 1272 (BC)(MMH)**

Dear Judge Henry:

We represent Plaintiffs Rodger Freeman and Shamar Viera in these § 1983 actions stemming from their wrongful conviction and nearly 12-year imprisonment.

Plaintiffs submit this letter under Local Rule 37.2 to respectfully request an informal conference with the Court concerning our anticipated motion to compel, and for attorneys fees, based on the City of New York's failure to disclose documents in response to June 3, 2024, First Document Requests, which required production of "the NYPD … informant files for Kenneth Williams, James Farmer, Damian James, Nicole Williams, and Williams' son" Dwon Williams."[1] Annexed hereto as **Exhibit A** is Freeman's Demand; annexed hereto as **Exhibit B** is Viera's duplicate Demand. The City's response to Freeman's Demand is annexed hereto as **Exhibit C**.

Our good faith efforts to resolve this issue without the Court's intervention were unsuccessful. Annexed hereto as **Exhibit D** is Plaintiffs' Good Faith Letter dated March 24, 2026. In brief, we met and conferred with the City of New York on May 21, July 24, and November 18, 2025, and January 27, 2026, but we did not reach a resolution. We corresponded via email with the City following last month's Good Faith Letter, yet did not resolve the dispute.

Plaintiffs' desire for the informant files for Damain James is striking. Kenneth Williams named Mr. James as his shooter in a dying declaration immediately following his attempted murder; but, Mr. James curiously faced no consequences for attempting to kill Mr. Williams. First Amended Complaint ("FAC") ¶ 18, 25, 33, 34, 40, 41. James Farmer, who was arrested with the firearm that was used to shoot Mr. Williams, also faced no consequences for the attempted murder of Mr. Williams. *Id*. ¶¶ 35, 40, 41.

---

[1] Plaintiffs' Third Demand sought overlapping document disclosure: "All documents, including the complete case files, concerning all NYPD criminal investigations James Farmer and/or Damian James cooperated in, provided information in, served as informants in, paid other otherwise, at any time from January 2010 through December 2014."

There are several reasons why Plaintiffs seek the informant files of Antoinette Williams (Plaintiff Freeman's then-girlfriend), Nicole Williams (Antoinette's mother and a prosecution witness at Plaintiffs' trials), and Dwon Williams (Antoinette's brother).

**First**, one of Plaintiffs' individual claims against Detectives McDonald, Obdyke and Vargas is that they engaged in a civil conspiracy with "[Kenneth] Williams and Ms. Williams, and/or other unnamed conspirators" FAC ¶ 324, to frame and falsely arrest Freeman and to coverup "the *Brady/Giglio* material that undermined the case against" him. ¶ 325. Nicole Williams status as an informant is clearly *Brady* material. *See Banks v. Dretke*, 540 U.S. 668, 691(2004) ("Farr's paid informant status qualifies as evidence advantageous to Banks."). The individual defendants are liable for the non-disclosure of this material by virtue of their participation in a civil conspiracy to suppress it. *See O'Hara v. City of New York*, 2021 WL 4932287, at *8 (E.D.N.Y. 2021) (Glasser, J.) (as a member of a civil conspiracy, a defendant is "as a matter of law, liable for each act taken in furtherance of the conspiracy, even if he was not directly involved in the specific act."); *Haughey v. County of Putnam*, 2020 WL 1503513, at *9 (S.D.N.Y. 2020) (Karas, J.) (noting applicability of this doctrine in § 1983 cases).

**Second**, Plaintiffs' FACs allege the individual defendants maliciously prosecuted our clients when they fabricated a statement and identification implicating our clients in the crime, and explained away evidence exculpating them. *Breton v. City of New York*, 404 F. Supp. 3d 799, 811 (S.D.N.Y. 2019) (*quoting Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998)) ("Although it is true that police officers do not have an independent 'duty to investigate an exculpatory statement of the accused,' a "police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58, 73 (E.D.N.Y. 2014) (quotation marks omitted). "Of particular relevance, the courts have stressed that, in determining whether an arrest is justified, an officer may not disregard plainly exculpatory evidence.").

Kenneth Williams's and Nicole Williams's status as informants may explain why they went along with the individual defendants' scheme. Notably, our investigation revealed Dwon Williams was a suspect in the attempted murder of Kenneth Williams. Yet, defendants apparently failed to investigate him or, worse, because he and his family were informants, did not pursue charges regarding his involvement in the crime. This all goes to the heart of the individual defendants' decision to arrest and charge Freeman and Viera with attempted murder, instead of James, Farmer and Dwon Williams, and whether those acts were undertaken in good faith or with malice, and the credibility of the body of evidence they had when making the decision to pursue our clients.

**Third**, Nicole Williams' son Dwon's status as an informant may independently explain why police chose to pursue our clients and not charge him. *See e.g. People v. Wright*, 86 N.Y.2d 591, 596 (1995) ("[T]hat Washington had previously operated as a police informant would have provided the defense with an explanation for the decision by the police to disbelieve, and subsequently to arrest, defendant—who promptly notified 911 following the incident—as opposed to Washington.")

**Fourth**, to the extent that Defendants McDonald, Obdyke and Vargas concealed *from KCDA prosecutors* that the witnesses implicating our clients were secretly police informants, this

is an independent *Brady* violation rendering the individual defendants liable. *See e.g. Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure requirements of *Brady*[.]"); FAC ¶¶ 157-166 (alleging the individual defendants violated *Brady* by concealing from the KCDA their false representations to the DA's Office to convince the office to criminally charge Freeman and Viera, and their own and each other's misconduct.").

Anticipating the City's opposition, Plaintiffs are not required to prove the existence of responsive documents before serving a document request. *See, e.g.*, *Puckett v. Cnty. of Sacramento*, 2024 WL 4289578, at *2 n. 1. (E.D. Cal. Sept. 25, 2024) (*citing Taylor v. Cnty. of Calaveras*, 2019 WL 6341131, at *4 (E.D. Cal. Nov. 27, 2019) ("[O]bjections that a request assumes facts not in evidence, calls for speculation, or lacks foundation are not proper in the course of written discovery."); *Garcia v. Clark*, 2012 WL 1232315, at *2, *12 (E.D. Cal. Apr.12, 2012) (explaining that "[a]ssuming facts not in evidence may be the basis for an objection during trial or some other evidentiary hearing," but is not proper during the course of discovery); *Hammond v. Mgmt. & Training Corp.*, 2015 WL 402022, at *6 (E.D. Cal. Jan. 29, 2015).

In other words, the City cannot legitimately refuse to produce clearly relevant evidence that may be in their possession simply because Plaintiffs cannot prove the evidence exists at the time they made their discovery requests. Plaintiffs have no such burden. Plaintiffs' obligation is to ensure our discovery requests seek material "relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26 (b)(1). As explained above, the documents sought are highly relevant to Plaintiffs' claims and defenses. If the City's position is that the records do not exist, that is a basis to oppose Plaintiff's request, not a basis to avoid even attempting to make disclosures.

We appreciate the opportunity to raise the present issues with the Court in an informal Rule 37.2 conference with the Court  so that discovery—and the litigation—may proceed.  Plaintiffs thank the Court for its time.

Very truly yours,

Andrew Stengel

cc:     Kavin Thadini, Esq.  (by ECF and Email)